**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

FRANK A. WITHERSPOON,

        Plaintiff,                    Case Number: 09-12847

v.                                            VIRGINIA M. MORGAN
                                             UNITED STATES MAGISTRATE JUDGE

COMMISSIONER OF SOCIAL SECURITY

        Defendant.

_____ /

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This is an action for judicial review of the defendant's decision denying plaintiff's application for social security disability benefits. This case is before the magistrate judge for opinion and order pursuant to the parties' consent under 28 U.S.C. §636(c) and the district judge's Order of Reference. (Dkt. #10) Plaintiff alleged that he became disabled April 2, 2006 due to arthritis, pain, chronic obstructive pulmonary disease (COPD), cardiovascular impairment, and depression. He was initially denied benefits, the social security administration finding in August 2007 that he could do simple, unskilled work. (Tr. 58) Plaintiff appealed the denial and had a video hearing before an ALJ at which a vocational expert also testified. The ALJ found that plaintiff had the severe impairment of arthritis, but that the COPD, cardiovascular impairment, and mental impairment were non-severe. (Tr. 19) Plaintiff could perform a limited range of skilled and semiskilled medium work, including his past relevant work, with limitations of no more than occasional climbing, balancing, kneeling, crawling, and frequent stooping and crouching. (Tr. 21,

23, Dkt. #6) The plaintiff therefore was not disabled. That decision became the final decision of the agency. Plaintiff contends that the finding is not supported by substantial evidence; defendant contends otherwise. For the reasons discussed in this opinion, the court finds that the ALJ's determination is not supported by substantial evidence. Accordingly, plaintiff's motion should be granted, the matter should be remanded to the agency for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g), and remanded to the secretary for a calculation of benefits due.

Plaintiff was born December 28, 1951, and was almost 57 when the decision was issued November 24, 2008. Plaintiff attended school to the eighth grade but received a GED in 1972. Plaintiff has thirty years of work as a forms grinder and drill operator.

**Standard of Review**

The Commissioner's final decision is subject to judicial review under 42 U.S.C. § 405(g), which provides, *inter alia:* "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). A court "'must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.'" *Colvin v. Barnhart,* 475 F.3d 727, 729-30 (6th Cir.2007) (quoting *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997)). If the Commissioner's decision is supported by substantial evidence, the court must defer to that decision "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir.2004) (quoting

*Wright v. Massanari,* 321 F.3d 611, 614 (6th Cir.2003)).

Disability is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* § 1382c(a)(3)(A). An individual will only be determined to b under a disability if his impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Id.* § 1382c(a)(3)(B).

The ALJ, in determining whether a claimant is disabled, conducts a five-step analysis:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Commissioner,* 127 F.3d 525, 529 (citing 20 C.F.R. § 404.1520).

Under the five-step inquiry, the claimant bears the burden of proof through the first four steps, and the Commissioner bears the burden of proof at the final step. *Jones v. Comm 'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir.2003). To prevail at step five, the Commissioner must "identify a significant number of jobs in the economy that accommodate the claimant's residual functioning capacity," *id.,* taking into account factors such as age, education, and skills. *Walters,* 127 F.3d at 529.

The issue before the court is whether to affirm the Commissioner's determination. In *Brainard v. Secretary of HHS*, 889 F.2d 679, 681 (6th Cir. 1989), the court held that:

> Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L. Ed. 2d 126 (1938). The scope of our review is limited to an examination of the record only. We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence. *Reynolds v. Secretary of Health and Human Services*, 707 F.2d 927 (5th Cir. 1983).

*Brainard*, 889 F.2d at 681.

Plaintiff raises five issues which are interrelated and somewhat duplicative. Plaintiff alleges that the decision was: (1) not supported by substantial evidence, (2) the plaintiff did not have the residual functional capacity (RFC) to perform medium work, (3) that plaintiff's depression was severe, (4) that the ALJ erred in assessing plaintiff's complaints of pain, and (5) that the ALJ did not give proper weight to the opinion of the treating physician and therefore the hypothetical question to the vocational expert was inaccurate.

4

**Discussion**

At the hearing before the ALJ in October 2008, plaintiff testified that he worked for over thirty years at Nachi Machining Technology in Macomb County, Michigan where he made gears for automotive companies, Caterpillar tractor, washing machines, anything that was a gear. (Tr. 9, 29, 31)  He was primarily a form grinder.  He became a drill operator shortly before his layoff because the form grinder work was being transferred overseas and to South Carolina, and they told him that he could avoid getting laid off if he would take the drill operator position, which he did. But then he was laid off anyway in Apri, 2005. Plaintiff testified that he could do the drill operator position but then they changed it to a classification that required him to run six other machines.  His employer felt that plaintiff was not able to adjust to the new duties or run the new machines.  After plaintiff looked at the new job description, he agreed.  He was allowed to retire. (Tr. 44)  His job as a form grinder required him to pick up parts weighing up to 30 or 50 pounds or so and put them on the machine.  (Tr. 45-47, 117) The job as a drill operator required a lot of bending over and handling parts.  He occasionally needed help to perform the job because he could not pull the part out of the coolant bath if it became stuck due to the suction. (Tr. 45) His job also required him to walk 8 hours, stand 8 hours, sit one hour, stoop and bend forward at the waist for 6 hours, handle, grab and grasp big objects for 8 hours, reach for 8 hours, and write, type or handle small objects for 8 hours. (Tr. 117)  He is receiving retirement income from that company; the retirement payments began a few months before the hearing. (Tr. 29, 30)

With respect to his medical issues, plaintiff's primary care physician is Dr. Mark Joy and now Dr. Christopher Borgeil, M.D. who took over the practice at Physician's Health Network. Plaintiff received treatment there including medication for depression. (Tr. 118-119)

5

Plaintiff testified that he began having problems with his shoulders and back; he tore his rotator cuff which he first treated with physical therapy. (Tr. 34-5) This began a few years before the lay off. He was off on Workers Compensation for some period of time but he is not sure when. (Tr. 35) He last had physical therapy for his shoulder about two years before the hearing. His back problems have been long standing and progressive. He is stiff in the morning, has good days and bad days, and is bedridden about 4 to 6 days a month. (Tr. 47) Plaintiff has not been hospitalized for his back problem and does home exercises as he was directed. (Tr. 40, 7-8) He can lift a gallon of milk but if he has to reach to the back of the refrigerator and lift it, he feels pain shooting up his back. (Tr. 46) He uses a TENS unit daily and a heating pad on bad days; these help. (Tr. 45-47) Regarding his mental health issues, plaintiff stated that after he was laid off, he went to Michigan Works to see about re-training. But, he could not pass their test which included grammar, punctuation, commas and in mathematics, decimals and square roots. He began to feel useless and depression really hit him. He has been treated with various anti-depressant drugs and is currently on prescription medication for his depression. (Tr. 39, 143) He tried marijuana in high school and does drink alcohol. (Tr. 40) After he was laid off, he went to bars more often than he had when he was working but he has stopped that. (Tr. 39-41) Plaintiff testified that he had a hard time remembering and concentrating. (Tr. 116) His medications (of Flexeril and Tylenol #3) cause him to feel drowsy. (Tr. 43, 120, 137) Plaintiff testified that he could sit for about 20 minutes and stand for ten minutes. (Tr. 46)

The vocational expert Michelle Peters, testified that plaintiff's form grinder position was skilled medium work and the drill press operator was semi-skilled and medium work. (Tr. 50) If he retained the ability to crouch and stoop, there would be 600 positions regionally. There are 18,000

6

positions in other cutting, grinding, and press operating positions in the state. There are transferable skills to other grinder and drill operator positions at the light level, 450 in Port Huron and 7000 state-wide. (Tr. 50-51) If such a person were limited to no more than two hours per day of standing, walking, and sitting, there would be no work. (Tr. 52) If the person were required to take unscheduled breaks or scheduled breaks of more than two per day, he could not work. If he were unable to maintain attention, concentration, persistence or pace to the tasks for at least 80% of the workday, he could not work. (Tr. 52) If the person were unable to remember detailed instructions, maintain concentration and attention, there would be no work he could do. The VE opined that skilled work has more mental stresses than in unskilled work. All the grinder positions would be skilled work. All the jobs also require repetitive use of the hands and arms for reaching, including overhead work. (Tr. 52-3) This would be true at all exertional levels including light and sedentary work. *Id.*

A Physical Residual Functional Capacity Assessment was performed by Medical Consultant Kimberly Booker (no medical code or title is given for this person). (Tr. 152) It does not appear that the person is a physician or even a nurse. Based on her review of plaintiff's medical records, plaintiff impairments were deemed partially credible. He has shoulder pain and tendinitis in both shoulders. He has lumbar radiculopathy and depression. He has heart problems evidenced by a Myocardial Spect done 3/3/06 which showed an ejection fraction of 61%. The impression was a previous infarct (heart attack) long the inferior wall of the left ventricula myocarium. This was consistent with a noted abnormal septal contraction and hypokinesia in the inferior basal part of the left ventricle. (Tr. 147) Plaintiff also had hernia surgery three times in the past. (Tr. 150) The conclusion was that he could do medium work. (Tr. 146)

7

Records show that the cardiac condition was treated by Dr. Reddy at Mercy Hospital in Port Huron in 2003. (Tr. 347) The diagnoses included atypical chest pain with positive stress test. (Tr. 348) The electrocardiogram portion of the stress test did not show ischemia, but the nuclear scan potion did suggest ischemia involving the inferior and inferoapical portion of the left ventricle. Considering his family history of coronary disease, hyperlipidemia, smoking, and symptomatology detailed in the cardiac report, a cardiac catheterization was recommended. (Tr. 347) He was placed on a regime of baby aspirin and Tenormin 25 mg daily. (Tr. 346) No significant coronary artery disease was found. (Tr. 343)

At the request of the agency, psychologist Daniel Blake, Ph.D., reviewed the records and found that plaintiff had the medically determinable impairment of MDD (major depressive disorder) for which he takes prescription medication (plaintiff has been on Xanax and Celexa at different times) and a history of polysubstance use. (Tr. 196, 201, 205) The mental impairment resulted in mild limitations of daily living and social functioning but moderate limitations in the ability to maintain concentration, persistence and pace. (Tr. 203) The Mental Residual Functional Capacity Assessment found him to be moderately limited in the ability to maintain attention and concentration for extended periods; moderately limited in the ability to complete a normal workday and work week without interruptions from psychologically based symptoms, to accept instructions from supervisors, and to set realistic goals or make plans independently. (Tr. 207-208)

Plaintiff's treating physician Dr. Borgiel submitted a report dated November, 2007. (Tr. 212-216). Medical records from his office are also included in the file. Dr. Borgiel opined that plaintiff had chronic headaches, COPD, coronary artery disease, fatigue, and a poor prognosis. He had pain in his back which radiated into his leg. He has undergone an MRI of his shoulder but no surgery.

Plaintiff was limited to siting and standing/walking less than two hours a day and must walk every ten minutes for five minutes. He requires a job that will permit changing positions at will, will permit unscheduled breaks for walking, and lifting was limited to rarely lifting up to 20 pounds. He can sustain neck flexion but only turn his head left or right occasionally.

**Analysis**

*1. Substantial Evidence Does Not Support the Plaintiff's Ability to Perform the Semi-Skilled to Skilled Medium Work, including his past work, identified by the ALJ.*

Plaintiff argues that the decision was not supported by substantial evidence; that he did not have the residual functional capacity (RFC) to perform medium work; and that plaintiff's depression was severe. He also argues that the treating physician's opinion was not given proper weight and that his complaints of pain were disregarded.

*A. Plaintiff's Depression and Cardiac Condition were Severe Impairments at Step Two*

The Sixth Circuit first set forth the standard as to what constitutes a severe impairment in *Farris v. Secretary of HHS*, 773 F.2d 85 (6th Cir. 1985). In that case, the court noted that an overly stringent interpretation of the severity requirement violates the statutory standard for disability by precluding administrative determination of the crucial statutory question: "[W]hether, in fact, the impairment prevents the claimant from working, given the claimant's age, education and experience." *Id.* at 89. An impairment is non-severe only if it is a "'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'" *Id.* at 90 (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). This is the same standard set forth by the Eleventh Circuit in *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). The regulatory severity test, the court noted, was to be only an administrative convenience designed to screen out totally

groundless claims. *Murphy v. Secretary of HHS*, 801 F.2d 182, 185 (6th Cir. 1986). This standard is now codified at 20 C.F.R. 404.1520(c) and 404.1521. In light of these legal principles and recent history, it is now plain that in the vast majority of cases, a disability claim may not be denied without the consideration of the person's individual vocational situation and medical evidence. See, *Higgs v. Bowen*, 880 F.2d 860, 862-3 (6th Cir. 1988) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987)). Where the claim is totally groundless solely from a medical standpoint, the requirement of a severe impairment may be properly employed. *Higgs*, 880 F.2d at 863, *Farris*, at 90, n. 1. An administrative finding of no severe impairment may be upheld despite conclusory disability opinions submitted by treating physicians. *Higgs,* 880 F.2d at 864; *Landsaw v. Secretary of HHS*, 803 F.2d 211, 213 (6th Cir. 1986). The defendant is likewise entitled to discount plaintiff's subjective descriptions of symptoms, 42 U.S.C. § 423(d)(5)(A); *Varley v. Secretary of HHS*, 820 F.2d 777, 780 (6th Cir. 1987).

Plaintiff has experienced cardiac pain, had a stress test with some evidence of a prior heart attack, and was placed on prescription medication and an aspirin regimen. The ALJ found that the tests were mildly abnormal, his ejection fraction was 45%[1], (TR.19) and plaintiff also had left ventricular hypertrophy, hypokinesia, and abnormal septal contraction. *Id*. Although the cardiac condition presented few problems, and plaintiff had good exercise capacity, his doctor reports fatigue and coronary artery disease. (Tr. 212) Determination that this impairment was non-severe at step two was error.

Likewise, the determination that the depression was non-severe was error. Reviewer Daniel

---

[1] The ejection fraction for a healthy heart is about 55%. See, www.mayoclinic.com /health/heart-failure.

10

Blake, Ph.D. found that plaintiff had the medically determinable impairment of MDD (major depressive disorder) for which he takes prescription medication: Xanax and/or Celexa. The mental impairment affected him with mild limitations of daily living and social functioning and moderate limitations in the ability to maintain concentration, persistence and pace. (Tr. 203) The Mental Residual Functional Capacity Assessment found him to be moderately limited in the ability to maintain attention and concentration for extended periods; moderately limited in the ability to complete a normal workday and work week without interruptions from psychologically based symptoms, to accept instructions from supervisors, and to set realistic goals or make plans independently. (Tr. 207-208) These are not consistent with a determination of non-severe at Step Two.

    *B. Plaintiff's RFC did not include the Ability to Perform Skilled and Semi-skilled Medium Work*

The ALJ also determined that plaintiff had the RFC to perform a range of medium work including his past work. Medium work is defined as: "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §404.1567(c). A full range of medium work includes walking and standing, off and on, for 6 of 8 hours.

Plaintiff's treating physician reported that plaintiff could lift not more than 20 pounds and was limited in his ability to sit, stand, and walk. (Tr. 213) He has trouble reaching and bending. Plaintiff sees his doctor frequently and plaintiff's condition would, in the doctor's opinion, cause him to miss more than four days of work per month. (Tr. 215) There are extensive doctor's office notes, although they are difficult to read. (Tr. 216-270) There are also laboratory studies, (Tr. 271-

11

308) and other objective studies (Tr. 309-345) He also experiences fatigue and dizziness, as well as ongoing shoulder pain, back pain with spasm, and other physical issues. (See eg Tr. 228-231) These physical conditions alone would make it difficult for him to do his past relevant work.

However, plaintiff's mental impairment which is more than non-severe, would preclude his performance of skilled and semi-skilled work. It is true that plaintiff has not been hospitalized for depression but the treating physician and the reviewing psychologist have found that it has mild to moderate impact on his functional capacity. Not to consider the mental issues in evaluating whether plaintiff could perform his past work was error. Plaintiff has suffered from anxiety and depression (Tr. 214); he has difficulty maintaining attention and remembering instructions. Plaintiff reported having suicidal thoughts and suffered from major depression in September 2006. (Tr. 225) The social security agency initially found him able to do simple, unskilled work; it was only on appeal to the ALJ that suddenly he could perform skilled work. If plaintiff could not do his past relevant skilled/semiskilled medium work, the burden shifted to the agency to show that there was other work that he could do. The agency did not meet this burden.

*C. The ALJ erred in assessing plaintiff's complaints of pain*

Plaintiff claims the ALJ did not properly evaluate his complaints of disabling pain. The ALJ found they were not credible. Pain caused by an impairment can be disabling, but each individual has a different tolerance of pain. *Houston v. Secretary of HHS*, 736 F.2d 365, 367 (6th Cir. 1984). Therefore, a determination of disability based on pain depends largely on the credibility of the plaintiff. *Houston*, 736 F.2d at 367; *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997); *Villarreal v. Secretary of HHS*, 818 F.2d 461, 463 (6th Cir. 1987). Because determinations of credibility are peculiarly within the province of the ALJ, those conclusions should

12

not be discarded lightly. *Villarreal*, 818 F.2d at 463-464. Nevertheless, even the reviewing doctors opined that plaintiff's complaints were at least partially credible. There is little discussion of this issue in the opinion.

   *D. The ALJ did not give proper weight to the opinion of the treating physician and therefore the hypothetical question to the vocational expert was inaccurate.*

The VE was asked to assume a person without any of the restrictions discussed above. Upon questioning, the VE opined that if such a person were limited to no more than two hours per day of standing, walking, and sitting, there would be no work. (Tr. 52) If the person were required to take unscheduled breaks or scheduled breaks of more than two per day, he could not work. If he were unable to maintain attention, concentration, persistence or pace to the tasks for at least 80% of the workday, he could not work. (Tr. 52) If the person were unable to remember detailed instructions, maintain concentration and attention, there would be no work he could do. The VE opined that skilled work has more mental stresses than in unskilled work. All the grinder positions would be skilled work. All of the questions to the VE essentially resulted in the opinion that if plaintiff's severe mental impairment of depression were factored in, he could not work.

*2. The ALJ Failed to Consider Plaintiff's Impairments in Combination.*

An ALJ must consider a claimants impairments in combination. See 20 CFR 404.1523; SSR 96-8p, 1996 WL 374184 *5. Because even an impairment which is non-severe may prevent the person from performing past relevant work or may narrow the range of other work, the ALJ must consider the impairments in combination. *Id.* That did not happen here.

The combined effect of all impairments must be considered, even if considered separately none would be disabling. *Scott v. Astrue*, 2010 WL 909994 (ED Mo), quoting *Cunningham v. Apfel*, 222 F3d 496, 501 (8th Cir. 2000).

THEREFORE, IT IS ORDERED THAT plaintiff's motion for summary judgment be granted, defendant's motion be denied, and the decision denying disability benefits be reversed, and the matter remanded to the Commissioner for further proceedings, including a calculation of benefits due.

                      s/Virginia M. Morgan
                      Virginia M. Morgan
                      United States Magistrate Judge

Dated: June 3, 2010

### PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on June 3, 2010.

                      s/Jane Johnson
                      Case Manager to
                      Magistrate Judge Virginia M. Morgan